## S92A1411. SEARS v. THE STATE.
### (426 SE2d 553)

SEARS-COLLINS, Justice.

This is an interim appellate review of a case in which the state seeks a death sentence. See OCGA §§ 17-10-35.1 and 17-10-35.2.

1. Sears contends the trial judge should be recused on the ground that the judge knew the victim and her husband. We disagree.

(a) The facts underlying the recusal motion are as follows:

The victim's husband was an attorney. He and the trial judge served in the Air National Guard (the "ANG") assigned to the State Headquarters. The judge is a judge advocate, the husband (now retired from the ANG) was not. They were in different departments.

The husband and the trial judge were never associated as co-counsel in a case, and never handled cases as opposing counsel. The husband has appeared before the trial judge only in one contested case (and an occasional uncontested divorce).

Socially there has been minimal contact. Both attended a retirement function for another member of the ANG. The judge went to a birthday party at the husband's house "several years ago." From time to time, both dined with a group of ANG staff, and might have sat at the same table. The judge testified that the victim's husband was a friend, but not a close personal friend.

One time the victim talked to the judge at his office about some domestic relations problems. He told her he could not get involved. The conversation may have lasted 30 minutes, the judge explaining:

> "You know, if someone calls and says can I come by and talk to you for a few minutes, yes, sure, come by, this is what it's about, and by the time you pass the amenities, find out what it's about, and take the time in a courteous way to explain why you cannot get involved in the matter, I would guess that whatever time transpired it was doing those things, and I would guess, I don't know, could be thirty minutes by the time you do those things."

(b) The focus here is not on bias in fact but whether the judge's impartiality might reasonably be questioned, keeping in mind the reality that any judge will have "come to the bench after having had extensive contacts with the community and the legal profession." *Bonelli v. Bonelli*, 85 ALR4th 691, 699 (Conn. 1990).

Recusal generally has not been mandated simply because the judge knew socially one or more of the parties or their attorneys. In *Bonelli v. Bonelli*, supra, recusal was not required even where the judge had been co-counsel with one of the attorneys in a related case that was still pending, where the co-counsel relationship was limited,

the judge no longer had any financial interest in the related case, and there was no recent contact between the judge and the attorney about the case.

In *Smith v. State*, 189 Ga. App. 27 (2) (375 SE2d 69) (1988), the Court of Appeals upheld the denial of recusal where the victim of an alleged attempt to commit murder was the sheriff, with whom the judge had a regular working relationship.

Any analysis of the necessity for recusal is necessarily fact-bound, requiring an examination of the nature and extent of any business, personal, social or political associations, and an exercise of judgment concerning just how close and how extensive (and how recent) these associations are or have been.

While the victim's consultation with the judge about her domestic situation merits scrutiny, in view of the limited nature of the consultation, and the judge's refusal to get involved, it is not enough reasonably to call into question the trial judge's impartiality in this case. Given the limited social relationship and the lack of any legal relationship between the judge and the victim and her husband, we conclude that recusal is not necessary. Compare *Ward v. State*, 262 Ga. 293, 300 (19) (417 SE2d 130) (1992).

2. Blacks comprise 9.2 percent of the population of Cobb County, but only 5.4 percent of the voter registration list. The Cobb grand jury list is drawn at random from the voter list, so 5.4 percent of possible grand jurors are black — a 3.8 percent absolute disparity. The racial disparity is 0 on the traverse list, however, because the computer selection is manipulated to make the numbers come out "right." Thus, a black voter is somewhat more likely to be included on the list than a white voter.

Sears contends this "forced" list fails to represent a fair cross-section of the community.

If the Cobb voter list were more severely underrepresentative of blacks, Sears would have a stronger argument for requiring the supplementation of the voter list. Given the practical difficulty of supplementing such a large list, and the limited disparity, we find no error here. See *Parks v. State*, 254 Ga. 403 (6) (330 SE2d 686) (1985).

3. As the defendant was being booked into jail, an officer conducting a routine inventory of his personal effects thumbed through a notebook, saw the word "killed" and seized the notebook. The notebook was held separately in the detention center. An investigator obtained a warrant for the search of the notebook.

The defendant moves to suppress the notebook on the ground that "private" papers are not subject to seizure.

OCGA § 17-5-21 (a) provides that warrants may issue for, inter alia, (1) private papers that are designed or intended for use or which have been used in the commission of a crime, and (5) tangible evi-

dence of a crime except private papers. OCGA § 17-5-21 (b) provides that during a lawful search, an officer may seize tangible evidence of a crime except for private papers.

The state argues that even if the search warrant in this case was invalid under OCGA § 17-5-21, the item had already been seized during a valid inventory search. But under this reasoning, a warrantless search could be broader in scope than a search under a warrant. For example, "private papers" that were merely evidence of a crime could not be seized under a warrant, but could be seized in an otherwise proper warrantless search. The state's argument conflicts with both logic and the plain language of subsection (b) of OCGA § 17-5-21.

However, this court has held that "there is nothing inherent in 'papers' which immunizes them from searches otherwise proper under the Fourth Amendment." *Mooney v. State*, 243 Ga. 373, 385 (254 SE2d 337) (1979).

There is very little case law interpreting the meaning of the term "private papers" in OCGA § 17-5-21, or the reason for an exemption from seizure as to private papers. We conclude that the most reasonable interpretation of OCGA § 17-5-21, consistent with our opinion in *Mooney v. State*, supra, is to restrict its reach to papers covered by privilege (attorney-client, doctor-patient, etc.). Compare *Lowe v. State*, 203 Ga. App. 277, 279-280 (416 SE2d 750) (1992) (holding that OCGA § 17-5-21 must be construed in light of Georgia constitutional provisions regarding search and seizure "which are substantially the same as the Fourth Amendment provisions of the U. S. Constitution"). Since the papers at issue here were not protected by a privilege, the trial court did not err in denying Sears' motion to suppress.

4. Most of the defendant's claims about the validity of his confession require that we believe his testimony rather than that of the police officers. The record supports the trial judge's factual determinations. *Crawford v. State*, 245 Ga. 89 (2) (263 SE2d 131) (1980). Sears does contend that the interrogators' refusal to predict what kind of sentence might be imposed for his crimes induced "a hope of lighter punishment" and that therefore his statement was induced by a "hope of benefit." OCGA § 24-3-50. There is no merit to this claim. *Bryant v. State*, 193 Ga. App. 840 (1) (389 SE2d 405) (1989).

5. If a defendant wants to use psychiatric testimony, he must provide the state a reasonable opportunity to obtain its own evaluation of the defendant. See *Ingram v. State*, 253 Ga. 622, 636 (323 SE2d 801) (1984). That is why the defendant must give notice of its intent to present an insanity defense. See Superior Court Rules 31.1 and 31.4. See also *Johnson v. State*, 262 Ga. 527 (422 SE2d 648) (1992). There was no error in the denial of the defendant's request for a psychiatric evaluation after the guilt phase is completed but before the sentencing phase begins (rather than a pre-trial evaluation).

6. We see no reason to prohibit the state from running criminal background checks on prospective jurors. Cf. *Bennett v. State*, 262 Ga. 149 (1) (414 SE2d 218) (1992).

7. It is well settled that a defendant's lack of remorse is relevant to sentence. Evidence and argument may be presented on this issue. *Isaacs v. State*, 259 Ga. 717, 723 (9) (386 SE2d 316) (1989).

*Judgment affirmed. Clarke, C. J., Benham, Fletcher and Hunstein, JJ., concur; Hunt, P. J., concurs in the judgment only.*

DECIDED FEBRUARY 26, 1993.

Ray B. Gary, Jr., J. Michael Treadway, for appellant.
Thomas J. Charron, District Attorney, Jack E. Mallard, Assistant District Attorney, Michael J. Bowers, Attorney General, for appellee.