## S96A1500. HORNSBY v. CAMPBELL.
(480 SE2d 189)

HUNSTEIN, Justice,

This appeal arises from a quo warranto action initiated on May 3, 1996 by William C. Campbell, the Mayor of the City of Atlanta against Louise T. Hornsby, then Solicitor of the City Court of Atlanta, seeking to have the City Solicitor's office declared vacant on the ground that Hornsby had forfeited her claim to the office upon qualifying as a candidate for Fulton County District Attorney. The Superior Court of Fulton County determined that Hornsby was an "elected official" within the meaning of our State Constitution and declared the office of City Solicitor vacant by virtue of Hornsby having qualified as a candidate for a county elective office. Art. II, Sec. II, Par. V of the 1983 Georgia Constitution. Hornsby appeals and we affirm.

City court, commonly known as "traffic court," consists of a chief judge, other judges, a solicitor and other assistant solicitors.[1] The

---

[2] *Johnson v. State,* 266 Ga. 775, 779 (470 SE2d 637) (1996); *Reid v. State,* 235 Ga. 378, 381 (219 SE2d 740) (1975).

[1] Ga. L. 1967, p. 3360, §§ 4, 12. City courts, created in cities having a population of more than 300,000, are courts of limited jurisdiction empowered to try offenses against the traffic laws of this State and the traffic ordinances within the territorial jurisdiction of the designated city. Id. at §§ 1, 3. Section 12 provides for the position of city court solicitor. The solicitor is appointed and retained in the same manner as judges of the city court. (See fn. 3, infra.) Effective July 1, 1996, after the hearing at issue here, certain provisions of the 1967 law were amended and city courts became state courts of limited jurisdiction. See Ga. L.

judges and the solicitor are selected on the appointment-retention system. As part of this process the solicitor is selected by the mayor from a slate of candidates recommended by a panel of superior court judges.[2] After appointment, a solicitor serves an initial term followed by a yes-no city-wide retention vote in a special election, which does not involve a challenge by another candidate. If rejected by the electorate, the solicitor is replaced; if not, the solicitor will serve a subsequent term and stand for retention at the end of that term.[3]

Hornsby was appointed solicitor of the City Court of Atlanta in 1983. In October 1989 she retained her position with a majority of "yes" votes. On April 26, 1996 Hornsby qualified to run in the July 1996 primary election for the elective office of Fulton County District Attorney. In May 1996, the Atlanta city attorney informed Hornsby that her claim to the solicitor's office had been forfeited pursuant to Art. II, Sec. II, Par. V by virtue of having qualified as a candidate in the pending election. Hornsby refused to resign contending that although she had qualified for a county elective office, her removal from the solicitor's office was not authorized because the retention election in which she participated in 1989 to continue as solicitor was not an election for purposes of the Georgia Constitution. After the Mayor initiated the quo warranto action and filed a writ of ouster the trial court conducted a bench trial and ruled in favor of the Mayor.

1. Article II, Section II, Paragraph V requires, inter alia, that the office of any municipal elected official shall be declared vacant upon that official qualifying, in a general or special primary election, for another city, county or municipal elective office if the term of office for which the official qualifies begins more than 30 days prior to the expiration of the official's present term of office. No case in Georgia appears to have addressed the precise issue whether a city retention election constitutes an election for the purposes of the Georgia Constitution.[4] However, a review of the Georgia Constitution, statutory law, case law and foreign authorities directs us to the conclusion that election to the office of city solicitor via a retention election constitutes an "election to the office of a municipal elected official" within the meaning of Art. II, Sec. II, Par. V.

---

1996, p. 627 et seq.

[2] Ga. L. 1967, p. 3360, §§ 5 and 12.

[3] Ga. L. 1967, p. 3360, § 12 provides, in pertinent part, that a city court solicitor is eligible for retention in office in the same manner as outlined in Section 6 of the Act which governs election of city court judges. Section 6 provides "a question shall be submitted to the electors of the city as to whether the [solicitor] shall be retained in office." If a majority of voters votes in favor of retention, the solicitor is "elected for a succeeding term." Ga. L. 1967 at p. 3363, § 6.

[4] But see *Brooks v. State Bd. of Elections*, 848 FSupp. 1548 (S.D. Ga. 1994) wherein the district court considered the legality of a settlement agreement involving the judicial system of the State of Georgia under the Voting Rights Act of 1965.

Although no definition of a retention election appears in the Georgia Constitution, nothing in the Constitution expressly states that a retention election is *not* an election under Georgia law. See generally Voting and Elections, Art. II, Sec. I, Par. I et seq., of the Georgia Constitution. This follows because the term "election" is defined in Georgia law as "any general or special election." OCGA § 21-2-2 (4). A general election is defined as an election which recurs at a stated interval fixed by law, id. at (7), and a special election arises from some exigency or special need outside the usual routine. Id. at (28). Pursuant to Ga. L. 1967, p. 3360 §§ 6 and 12, the election for city solicitor is conducted as a special election, "called" by the mayor and the city council and held on the date of the general city election. Id. Under this statutory system, the city solicitor may be elected by a majority vote to retain the solicitor in office.

"[R]etention elections, . . . by definition have only one candidate, who is an incumbent, and a limitation on the vote to 'yes' or 'no.'" *Bradley v. Work*, 916 FSupp. 1446, 1465 (2) (S.D. Ind. 1996) (holding that retention elections, exclusive of the initial nomination and appointment process, are protected by the Voting Rights Act, section 2). However, in contrast to a life appointment, a candidate in a retention election is "compel[led] . . . to vie for popular support just as other political candidates." *Chisom v. Roemer*, 501 U. S. 380, 400 (111 SC 2354, 115 LE2d 348) (1991). A retention election is technically an election although it may not be the *preferred* form of election in all states. See generally *Clark v. Roemer*, 777 FSupp. 445, 466-467 (M.D. La. 1990). See also *League of United Latin American Citizens v. Clements*, 999 F2d 831, 872, fn. 33 (5th Cir. 1993) (included states utilizing retention elections for state judges in definition of states which "elect" trial judges).

Hornsby alleges that her position as city solicitor does not constitute an "elective" office within the meaning of Art. II, Sec. II, Par. V because it includes an initial nomination and appointment process and lacks multi-candidates. We recognize that retention elections do not carry *all* of the usual attributes of elections in comparison to those elections where voters may have a choice between alternative candidates. However, case law provides that elective offices in Georgia do not depend upon opposition from another candidate, but upon whether the office is "'filled by the direct exercise of the franchise of the voters.' [Cit.]" *Ingram v. State*, 253 Ga. 622, 624 (323 SE2d 801) (1984). The common meaning of the term "election" as defined in Black's Law Dictionary stresses a distinction between election and appointment with appointment referring to a choice or selection by an individual while election refers to a choice or selection by electors. Black's Law Dictionary, p. 608 (4th ed. 1968). This definition of election, which embodies the notion of a selection by electors rather than

appointment, sets forth a concept consistent with retention elections. Hence, a candidate who does not draw opposition, whether on the ballot or as a write-in, does not violate the notion of the election process; a lack of opposition does not negate the exercise of the vote by the electorate. Finally, we need only look to the language of Ga. L. 1967, p. 3363, § 6 to acknowledge that the Legislature has expressly contemplated that retention elections come within the definition of an election. The statutory language provides that following the completion of a solicitor's appointment, if that solicitor declares her candidacy and receives a majority of votes to *retain* her, she then "shall have been *elected* for a succeeding term of eight years." (Emphasis supplied.) Ga. L. 1967, p. 3363, § 6.

The retention election for solicitor of the City Court of Atlanta is a popular election whereby all voters are entitled to vote on the question of whether the solicitor should be retained. While serving in the capacity of solicitor, Hornsby was required to appear on the ballot for such approval by the general electorate of the city. As a candidate for the office of solicitor, Hornsby was accountable to the voters and the voters had recourse if she proved to be an unsatisfactory candidate. Because Hornsby could not serve without impunity and was subject to a vote in an open election, we accordingly conclude that the trial court was correct in determining that Hornsby is a "municipal elected official" within the contemplation of Art. II, Sec. II, Par. V of the Georgia Constitution. Inasmuch as it is undisputed that Hornsby's term of office as solicitor for the city court ended more than 30 days after the Fulton County District Attorney's term of office began and inasmuch as Hornsby is no longer entitled to make claim to the office of the solicitor for the City of Atlanta, we conclude the trial court did not err in issuing the writ of quo warranto or the writ of ouster.

2. During the pendency of the action, Hornsby filed a motion seeking the recusal of the trial judge on the ground that her impartiality was called into question by a provision in Ga. L. 1967, p. 3360, § 5 which allows any vacancy in the office of the solicitor to be filled by "appointment of the mayor from a panel of three qualified persons *nominated by a majority of the judges of the superior court.*" (Emphasis supplied.) Id. at p. 3362. Hornsby challenged the judge's impartiality, and that of any other Fulton County Superior Court judge, on the basis that because they could participate in selecting her successor, reasonable persons might question their ability to preside impartially over a suit to remove Hornsby from office. We disagree. Hornsby does not suggest that the trial judge harbors any personal bias or prejudice against her prohibited by Canon 3 C (1) of the Code of Judicial Conduct or that the judge has any financial interest in the outcome of the case, or any other basis for disqualification set forth in

OCGA § 15-1-8. Nor does she suggest that the judge had any connection with the events at issue in this case. Instead, Hornsby questions the judge's impartiality merely because the judge could participate on a panel to select another solicitor. Bias or prejudice cannot be presumed where the trial judge could remove herself from the process to select a successor solicitor, in the event such selection was warranted. Under these circumstances, we accordingly hold that the recusal motion was properly denied.

3. Hornsby contends that the trial court erred in refusing to dismiss the case because the petition for quo warranto was not verified at the time it was filed. The record reflects that the petition for writ of quo warranto was filed on May 3, 1996 and that a verification was filed at the hearing conducted on May 6, 1996. Quo warranto is a statutory remedy governed by the Civil Practice Act. "[U]nder the CPA, a petitioner in a quo warranto proceeding is not required to verify her pleadings." *Anderson v. Flake,* 267 Ga. 498, 500 (480 SE2d 10) (1997). It follows that this enumeration is without merit.

4. Hornsby next contends that the trial court erred in refusing to submit the case for a jury trial. OCGA § 9-6-64 (a) provides that where an application for a writ of quo warranto "involves only questions of law, the same may be determined, as are equitable proceedings, by the judge of the superior court . . . ." A jury trial is demanded only where the facts alleged are denied by the defendant. OCGA § 9-6-65. Hornsby admitted all of the material allegations contained in the petition for quo warranto, with the exception that she was an elected official. This remaining issue is a question of law, not fact, and the trial court properly decided the case without a jury.

*Judgment affirmed. Benham, C. J., Fletcher, P. J., Carley, Thompson, Hines, JJ., and Judge Kenneth Kilpatrick concur. Sears, J., disqualified.*

DECIDED FEBRUARY 3, 1997 —
RECONSIDERATION DENIED FEBRUARY 21, 1997.

*Walter M. Henritze, Jr.,* for appellant.
*Joe M. Harris, Jr.,* for appellee.