A00A0581. GILLIS et al. v. CITY OF WAYCROSS et al.
(543 SE2d 423)

POPE, Presiding Judge.

In November 1998, five residents of Ware County brought suit to prevent the City of Waycross from rezoning approximately 37 acres of land known as Winona Park or Scout Lake and conveying it at no cost to the Waycross-Ware County Development Authority ("WWDA"), which has plans to transfer the property at no cost to the Jones Company, a large Waycross-based corporation, for use as the site of their corporate offices. The defendants are the city of Waycross, Ware County, the WWDA, and the Jones Company. After a three-day bench trial in June 1999, Superior Court Judge Joseph B. Newton ruled in favor of the defendants on all counts. The residents enumerate 17 errors.

The property owners allege that the trial judge erred in failing to refer to another judge their two separate motions to recuse or disqualify him.

Under Uniform Superior Court Rule ("USCR") 25.3,

> When a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, the judge shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted. If it is found that the motion is timely, the affidavit sufficient and that recusal would be authorized if some or all of the facts set forth in the affidavit are true, another judge shall be assigned to hear the motion to recuse.

When considering the issue of disqualification, both OCGA § 15-1-8 and Canon 3E of the Code of Judicial Conduct should be considered. *Stephens v. Stephens*, 249 Ga. 700, 701 (2) (292 SE2d 689) (1982); see also *Hornsby v. Campbell*, 267 Ga. 511, 514 (2) (480 SE2d 189) (1997).

We take this opportunity to overrule opinions that limit the grounds for disqualification of a judge to only those enumerated in OCGA § 15-1-8. From at least 1910, the grounds for disqualification were limited to those enumerated in the statute. See, e.g., *Daniel v. Yow*, 226 Ga. 544, 546 (2) (176 SE2d 67) (1970); *Jones v. State*, 219 Ga. 848, 849 (1) (136 SE2d 358) (1964); *Elder v. Camp*, 193 Ga. 320, 321 (1) (18 SE2d 622) (1942); *Elliott v. Hipp*, 134 Ga. 844, 848 (2) (68 SE 736) (1910). But in 1982, the Supreme Court made clear that Canon 3E (formerly 3C) of the Code of Judicial Conduct provides "a

broader rule of disqualification" than that provided in the statute, and that both the statute and the canon provide grounds for recusal. *Stephens*, 249 Ga. at 701 (2); see also *Hornsby*, 267 Ga. at 514 (2). But since *Stephens*, several opinions of this court have continued to apply the prior rule. Therefore, to the extent that they follow the prior rule, the following opinions are hereby overruled: *Bevil v. State*, 220 Ga. App. 1, 3 (6) (467 SE2d 586) (1996); *Johnson v. State*, 208 Ga. App. 453, 454 (2) (430 SE2d 821) (1993); *Brannen v. Prince*, 204 Ga. App. 866, 868 (3) (421 SE2d 76) (1992); *Mapp v. State*, 204 Ga. App. 647, 649 (4) (420 SE2d 615) (1992). *Baptiste v. State*, 229 Ga. App. 691, 697 (1) (494 SE2d 530) (1997) need not be overruled. Although it quotes *Johnson* for the proposition that OCGA § 15-1-8 contains the exclusive and exhaustive grounds for recusal, it also expressly considered whether recusal was warranted under Canon 3E.

Applicable here is Canon 3E which states: "Judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned. . . ." The alleged bias of the judge must be:

> of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's prejudgment. To warrant disqualification of a trial judge the affidavit supporting the recusal motion must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.

(Citations and punctuation omitted.) *Birt v. State*, 256 Ga. 483, 486 (4) (350 SE2d 241) (1986). "[T]he alleged bias must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." (Punctuation omitted.) Id. at 485 (4). The movant need not show any actual impropriety on the part of the trial court judge. "The fact that his impartiality 'might reasonably be questioned' suffices for his disqualification." *King v. State*, 246 Ga. 386, 390 (7) (271 SE2d 630) (1980); see also *Sears v. State*, 262 Ga. 805 (1) (a) (426 SE2d 553) (1993). The determination is necessarily fact-bound, "requiring an examination of the nature and extent of any business, personal, social or political associations, and an exercise of judgment concerning just how close and how extensive (and how recent) these associations are or have been." Id. at 806 (1) (b).

On March 3, 1999, the residents first moved to recuse Judge Newton. Judge Newton dismissed and denied the motion without assigning the matter to another judge. He found that the motion was not timely and that the affidavit did not establish "bias, prejudice, or systematic pattern of prejudicial conduct."

It appears from the record that the motion was in fact timely under USCR 25.1. The supporting affidavit alleged that Judge Newton was the chairman of the Okefenokee Area Development Authority ("OADA"), an organization similar to the WWDA; that the OADA is sponsored by local governments and business interests for the purpose of promoting and developing industrial and economic growth in Ware and Pierce Counties; that Judge Newton had been appointed to the OADA by Ware County, a party to the litigation; that the OADA and the WWDA had recently jointly announced that a company owned by the Jones Company had agreed to purchase an industrial building located in an industrial park in Ware County (a different transaction from the one at issue in this case); and that a newspaper article reported that in connection with the announcement another board member of the OADA said,

> The Jones Company has been doing good for a long time. As [Waycross] Mayor Odum said we do need to emphasize our existing industries and businesses, those corporate folks who have made a commitment to the Okefenokee area. We are committed to those who are committed to our cities and towns.

Fifteen days after the court denied the first motion, the residents filed a second motion to recuse Judge Newton. In this motion the residents alleged that new information had come to light regarding his impartiality. The accompanying affidavit alleged many of the same facts and added that the purpose of the OADA is to further economic development for Ware and Pierce Counties; that the OADA shares office space and personnel with the WWDA; that one current board member of the OADA, Pete Coley, served for three years on the WWDA; that it was Coley who in part initiated the proposal to use Scout Lake for the purpose of economic development; and that Judge Newton may in fact have attended a meeting where the transaction at issue was discussed — the meeting included representatives of the OADA and the WWDA and officials of the city of Waycross and Ware County.

Judge Newton denied the second motion on the ground that the affidavit and the accompanying deposition of Coley were not legally sufficient to support the motion.

We are convinced that under the standards set forth in the Code of Judicial Conduct and as explained by the Supreme Court, the affidavits raised a reasonable question about Judge Newton's impartiality in the matter at issue. At a minimum the motion to recuse should have been assigned to another judge. Under the peculiar facts of this case, the judge was the chairman of what appears to be almost a sis-

ter organization to one of the defendants. He was appointed to that organization by another defendant, ostensibly to support its interests. That organization has as its purpose an interest that is fairly opposed to the interests of the residents and almost identical with the interests of the defendants. One member of the OADA allegedly made statements to the newspaper showing that the OADA is "committed" to companies who like the Jones Company are committed to our cities and towns. One can easily infer that the chairman of the organization is equally committed, i.e., partial to the interests of the OADA, the WWDA, Ware County, and the Jones Company. The affidavits allege fairly that members of the OADA have had some involvement with the proposed transaction at issue and that the judge himself may have attended a meeting on the topic. If true, these circumstances raise an appearance of impropriety, which is prohibited by the Code of Judicial Conduct (see Canon 2); they lead to the conclusion that Judge Newton's impartiality might reasonably be questioned; and therefore they support recusal in this case.

Accordingly, we remand this case to the Superior Court of Ware County for disposition of the motion by a different judge. *Birt v. State*, 256 Ga. at 486 (4); *State v. Fleming*, 245 Ga. 700, 703 (1) (267 SE2d 207) (1980). In the event the motion is denied, the judgment entered on the jury verdict may be reentered and a new appeal taken. *Central of Ga. R. v. Lightsey*, 189 Ga. App. 44, 45 (1) (374 SE2d 787) (1988). In the event the motion is granted, an interlocutory appeal may be sought under OCGA § 5-6-34 (b). If the motion is granted, all proceedings that occurred after the filing of the first motion to recuse are invalid and of no effect. *Gray v. Barlow*, 241 Ga. 347, 348-349 (245 SE2d 299) (1978); *Butler v. Biven Software*, 222 Ga. App. 88, 91 (2) (473 SE2d 168) (1996) (physical precedent only). Therefore, none of the other enumerations, which concern actions taken by Judge Newton after the filing of the first motion to recuse, will be addressed. See *Fleming*, 245 Ga. at 704 (3).

*Judgment reversed and remanded. Johnson, C. J., Andrews, P. J., Blackburn, P. J., Smith, P. J., Ruffin, Eldridge, Barnes, Miller, Ellington and Phipps, JJ., concur. Mikell, J., concurs specially.*

MIKELL, Judge, concurring specially.

Although I fully concur in the result and judgment, I write separately to mention the constitutional dimension to the issue of judicial disqualification. Superior court judges in Georgia are elected to four-year terms by the voters of the judicial circuit in which each judge resides and serves. See Ga. Const. 1983, Art. VI, Sec. VII, Pars. I and II (d). By casting their votes, the citizens of a judicial circuit solemnly select a man or woman who will sit in judgment of matters which may be of vital concern to each inhabitant of the community. The peo-

ple's choice of their judge is not a matter lightly to set aside for subjective or insubstantial reasons, and we do not do so in this case.

One might argue that a judicial disqualification does not deny the voters their right to decide who will sit on the bench in most cases. It might be said that a disqualification merely removes a judge in one case and can be accomplished only on rare occasions. But the voters have selected a particular judge to preside over all cases within his or her jurisdiction. Judges are not replaceable at will. When the chief judge or the district administrative judge of a judicial circuit replaces a disqualified judge, he or she arguably usurps the right of the citizens to have the judge they voted into office to adjudicate the case. See Uniform Superior Court Rule 25.4.

It was established in Georgia law as early as 1801 that an elected judge could be removed on certain statutory grounds. See Cobb's Digest of the Statute Laws of Georgia 460, Sec. 40 (1851), citing Ga. L. 1801. Therefore, the right of the citizens to elect their judges has long been subject to the possibility that the judge could be disqualified in a particular instance by a statutory procedure, brought on narrow, objective grounds. See OCGA § 15-1-8. But the addition in 1974 of more subjective grounds via the Code of Judicial Conduct significantly broadened the opportunities to disqualify the presiding judge. See generally *Hornsby v. Campbell*, 267 Ga. 571 (480 SE2d 189) (1997); *Stephens v. Stephens*, 249 Ga. 700 (292 SE2d 689) (1982).

To be sure, the Canons of Judicial Ethics, as contained in the Code of Judicial Conduct, are highly commendable. A strict adherence to them by every judge is essential to our integrity and to the public's confidence in Georgia's system of justice. But it must be recognized that they may, in rare instances, conflict significantly with the right of the citizens to choose who sits in judgment over them. The automatic provisions of USCR 25.3 do not recognize that conflict.

Nor do the rules take into account the delays occasioned in rural circuits by the filing of disqualification motions. In most multi-judge, urban judicial circuits, hearing motions to disqualify is rare. Judges usually recuse themselves voluntarily at the first suggestion of the appearance of impropriety. If such a motion must be heard and decided and a new judge substituted, these tasks can be accomplished in a multi-judge circuit in a matter of days. A motion to disqualify filed in a rural circuit, however, can delay an important trial for months when the allegations of the affidavit required by USCR 25.3 are sufficient, even if they are false or imaginary. As explained by former Supreme Court Chief Justice Harold G. Clarke, "[p]er se disqualifications are not only harsh, they most often lead to impractical results." *Stephens*, supra at 704 (Clarke, J., dissenting).

The case at bar concerns rezoning, the disposition of public land,

and a possible advantage to a for-profit corporation. The public policies underlying Georgia's decision to elect its judges would not seem to be strongly implicated in this dispute. But the next motion to disqualify may be brought in a death penalty case, or a dispute involving school prayer, or perhaps even an election contest regarding presidential electors. In such controversial cases, the people's choice of judge, along with his or her unique characteristics, should not be lightly discarded.

DECIDED DECEMBER 1, 2000.

*John M. Hatfield*, for appellants.

*Kopp & Conner, Neal L. Conner, Jr., Dillard, Bower & Crowley, Terry A. Dillard, Scott C. Crowley, Kenneth E. Futch, Jr.*, for appellees.