A11A0768. THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH v. BATSON-COOK COMPANY et al.

(714 SE2d 242)

McFADDEN, Judge.

The City of Savannah appeals the judgment entered in this action arising from the construction of an underground parking garage. The dispute arose out of the discovery of "materially different site conditions," as defined under the parties' contract. Raito, Inc., a subcontractor on the project, filed the action against Batson-Cook Company, the firm the city hired to design and build the garage. Batson-Cook then filed a third-party complaint against the city.

The city argues that the trial court erred in denying its motion to recuse the trial court judge, contending that, at a minimum, he should have assigned the motion to another judge for resolution. But the city's factual assertions are legally insufficient to warrant recusal. The city argues that the trial court erred in its ordering of the trial, but the trial court did not abuse its broad discretion in this regard. The city argues that it was entitled to a directed verdict on Batson-Cook's claim for final payment because Batson-Cook did not fulfill the contract conditions for final payment, but at least some of the conditions with which Batson-Cook did not comply depended on resolution of the issues of this lawsuit. The city argues that the trial court should have granted its motion for directed verdict because Batson-Cook did not give it notice of the alleged materially differing

---

site conditions within the contractual deadline, but there was evidence that the city received timely notice. The city argues that the trial court should have granted its motion for directed verdict on Batson-Cook's bad faith claim. But there was evidence that the city arbitrarily denied Batson-Cook's claim for an adjustment in price despite knowing that conditions were very different from what the parties had believed when they entered the contract. The city argues that the trial court erred by charging the jury on quantum meruit and promissory estoppel. We disagree because, contrary to the city's assertion, not all of the claims for payment arose from the parties' contractual relationship. The city argues that Raito's action was barred by its failure to comply with the Nonresident Contractors Act. But Raito's late registration constituted substantial compliance with the Act. Finding that no enumeration requires the reversal of the judgment, we affirm.

The city hired Batson-Cook to design and build an underground parking garage at Ellis Square. The September 1, 2005 contract included a guaranteed maximum price of $29,592,416 and a completion date of August 28, 2007. The contract also included a "materially differing site conditions" clause, which provided that should Batson-Cook encounter site conditions that differed materially from the conditions indicated in the contract documents or from conditions ordinarily found to exist, the price of the contract would be adjusted. The contract required the party observing the materially different condition to notify the other party within 21 days.

In December 2004, prior to the execution of the contract, WPC, Inc., a local engineering firm the city had hired, prepared a preliminary soils report that analyzed four soil borings so that interested bidders could prepare cost proposals. The borings indicated that the northeast corner of the site contained soft clay. The contract entered between the city and Batson-Cook contemplated a second, more detailed soils report. At the city's direction, Batson-Cook hired WPC to prepare the second report. On September 26, 2005, about two weeks after Batson-Cook and the city had entered their contract, WPC provided the second report. The second report showed no additional soft clay.

Batson-Cook hired Raito, Inc. to design and install an excavation support system for the project. After Raito began its work, it learned of additional soft clay at the site. Accordingly, it had to revise its design. Raito considered this to be a materially differing site condition, and so notified Batson-Cook on June 1, 2006.

Initially Batson-Cook denied that this was a materially differing site condition, but eventually it changed its opinion. When it did, Batson-Cook sought from the city an adjustment in the contract price based on differing site conditions. Because WPC's engineer

disagreed that materially different site conditions existed, since both of its soil reports had identified soft clay at the site, the city denied Batson-Cook's claim.

On March 6, 2008, before the project was completed, Raito sued Batson-Cook in Troup County, Batson-Cook's corporate home, for $5.8 million. Raito sought reimbursement for the extra costs it incurred in redesigning and constructing the support system because of the differing soil conditions.

Batson-Cook answered Raito's complaint and filed a third-party complaint against the city. Batson-Cook sought to pass through Raito's damages, agreeing that if conditions at the site were materially different, then Raito was entitled to reimbursement but that the city should pay. Batson-Cook also sought damages of its own.

The city answered Batson-Cook's complaint and filed a counterclaim against Batson-Cook. It alleged that Batson-Cook breached the contract and performance bond in unspecified ways.

The case was tried, and a jury returned a verdict in favor of Raito against Batson-Cook for $2,766,330 and for Batson-Cook against the city for $15,162,592 plus $2,009,620 in attorney fees and expenses. The jury also found Batson-Cook owed the city $594,000 for project delay. The city then filed this appeal.

1. The city challenges the denial of its motion to disqualify Judge William F. Lee, contending that at a minimum, Judge Lee should have assigned its motion to another judge for disposition. We review the denial of a motion to recuse for abuse of discretion. *Vaughn v. State*, 247 Ga. App. 368, 370 (2) (543 SE2d 429) (2000). Under Uniform Superior Court Rule (USCR) 25.3,

> [w]hen a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, the judge shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted. If it is found that the motion is timely, the affidavit sufficient and that recusal would be authorized if some or all of the facts set forth in the affidavit are true, another judge shall be assigned to hear the motion to recuse.

"[T]he court's duty [is] limited to determining the legal sufficiency of the affidavit required under USCR 25.2." *Studenic v. Birk*, 260 Ga. App. 364, 368 (2) (579 SE2d 788) (2003). "The focus here is not on bias in fact but whether the judge's impartiality might reasonably be questioned, keeping in mind the reality that any judge will have

come to the bench after having had extensive contacts with the community and the legal profession." (Punctuation omitted.) *Sears v. State*, 262 Ga. 805 (1) (b) (426 SE2d 553) (1993), overruled on other grounds, *Brogdon v. State*, 287 Ga. 528 (697 SE2d 211) (2010).

The city attached three affidavits to its motion to recuse. The first was the affidavit of Gregory K. Morgan, a partner with the firm representing the city. In his affidavit, Morgan attested: (1) that Batson-Cook counsel asked him to e-mail the city's discovery requests directly to attorney J. Littleton Glover, Jr., a member of the law firm Glover & Davis, who apparently would prepare the response; (2) that Batson-Cook counsel authorized Morgan to speak directly to Glover about the case because Glover is a lawyer and "in charge" or "the leader"; (3) that Morgan has communicated about the case on at least three occasions with Glover directly — without Batson-Cook counsel; (4) that some time later, Morgan found a letter on Glover & Davis letterhead signed by Nathan T. Lee as counsel for Batson-Cook; and (5) that Nathan Lee is Judge Lee's nephew.

The second affidavit was from Andrew D. Shore, another partner with the firm representing the city. Shore attested in his affidavit that Judge Lee assigned himself the case and that certain discovery documents indicated that J. Littleton Glover, Jr., and his firm are general counsel to Batson-Cook and represented Batson-Cook in the dispute that gave rise to this lawsuit. Shore attached to his affidavit Batson-Cook's interrogatory responses, verified by Glover, which include Batson-Cook's disclosure that at a social gathering, Glover told Judge Lee that Batson-Cook would be involved in a complex case in Troup County. According to the interrogatory responses, Judge Lee asked Glover whether Glover & Davis was general counsel for Batson-Cook in the matter, and Glover responded no.

Bruce Brown, another attorney for the city, submitted the third affidavit. Brown made no attestations about the case, but instead attached Georgia Secretary of State records showing that Glover is the registered agent for service of process for various companies affiliated with Batson-Cook.

The city in essence argues that Judge Lee improperly assigned himself the case involving a company for which his nephew's law firm is general counsel. The substance of these allegations, based on the factual assertions in the affidavits, is legally insufficient to warrant recusal because it did not demonstrate that Judge Lee's impartiality might reasonably be questioned. *Sears*, supra. See also *Ga. Kidney & Hypertension Specialists v. Fresenius USA Mktg.*, 291 Ga. App. 429, 430 (1) (662 SE2d 245) (2008) (fact that trial judge's daughter worked for a company that provided contract legal services to plaintiff's counsel did not support recusal). Compare *Gillis v. City of Waycross*, 247 Ga. App. 119, 121-122 (543 SE2d 423) (2000)

(affidavits raised "reasonable question about" judge's impartiality and motion to recuse should have been assigned to different judge). Consequently, Judge Lee did not err by failing to assign the disqualification motion to another judge.

2. The city argues that the court erred in its ordering of the trial by allowing Batson-Cook to put on its case first, followed by the city, and then followed by Raito. It contends that this amounted to an impermissible re-alignment of parties. It further contends that this allowed the de facto plaintiff, Batson-Cook, to avoid suing the city in Chatham County and instead to pursue its claims in its home county, amounting to a "fraud upon the Constitution."

The city has failed to show that the trial court's ordering of the trial amounted to a "realignment of the parties" by effectively making Batson-Cook the plaintiff and the city the defendant. Batson-Cook, in fact, was the plaintiff as far as its claims against the city, and the city was, in fact, the defendant as far as Batson-Cook's claims against it. Raito, which sought close to $6 million from Batson-Cook, the only party with which it had a contract, was not a "nominal" plaintiff. The city has pointed to nothing showing that Raito and Batson-Cook did anything improper in structuring the lawsuit.

"It is traditional that most of these procedural matters which come up during the conduct of a trial should lie within the sound discretion of the trial court in the absence of a controlling statute, and there is none here." *Berryhill v. State*, 235 Ga. 549, 550 (3) (221 SE2d 185) (1975), overruled in part by *O'Kelley v. State*, 284 Ga. 758 (670 SE2d 388) (2008).

> Much latitude of discretion must be allowed the [c]ourts, as to their mode of conducting business. The order in which a party is to introduce his evidence is to be regulated by the discretion of the [c]ourt. Discretion in regulating and controlling the business of the court is necessarily confided to the judge; and this court should never interfere with its exercise unless it is made to appear that wrong or oppression has resulted from its abuse.

(Citations and punctuation omitted.) *Ellis v. Cameron & Barkley Co.*, 171 Ga. App. 211 (1) (319 SE2d 38) (1984). And "[t]he trial court has broad discretion in determining how it will conduct a trial. This includes wide discretion in assigning positions of the parties, especially where there are more than two sides and more than two parties." (Citations omitted.) *Shivers v. Webster*, 224 Ga. App. 254, 257 (2) (480 SE2d 304) (1997).

The city has not shown that the trial court abused its discretion

by ordering the presentation of the case in the manner the court thought the jury would most easily understand.

3. The city argues that the trial court should have granted its motion for directed verdict on Batson-Cook's claim for final payment because Batson-Cook did not fulfill the contract conditions for final payment. "The standard of appellate review of the trial court's denial of a motion for a directed verdict is the 'any evidence' standard." (Punctuation omitted.) *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821 (1) (354 SE2d 6) (1987). The city contends that it was entitled to a directed verdict on Batson-Cook's claim for final payment because Batson-Cook failed to comply with contract provisions requiring Batson-Cook to request a final inspection, to submit a final accounting, to submit certain affidavits and the consent of its surety to demonstrate that it had paid its subcontractors, and to submit a final application for payment. Batson-Cook counters that its noncompliance with these provisions was excused by the city's failure to approve the change orders relating to the differing site conditions. For example, because the city did not approve the change orders regarding differing soil conditions, whether Raito was entitled to additional payment was in question, and Batson-Cook could not pay Raito. Since Raito contended it had not been fully paid, as demonstrated by its initiating this lawsuit against Batson-Cook, Batson-Cook could not provide the required affidavit that its subcontractor had been paid.

The city cites *Dixie Roof Decks v. Borggren/Dickson Constr.*, 195 Ga. App. 881 (395 SE2d 19) (1990), in support of its position that Batson-Cook's failure to submit the documents bars final payment. In that case, we held that where the subcontract contained as an express condition precedent to final payment that the subcontractor provide a warranty, the subcontractor could not argue that it should be excused from the duty to produce the warranty by the contractor's failure to make final payment and the contractor's indication that it would dispute certain sums claimed by the subcontractor. Here, at least some of the conditions with which Batson-Cook did not comply depended on resolution of the issues of this lawsuit, such as whether differing soil conditions existed and whether the guaranteed maximum price should be adjusted. The law does not require a futile act. *Deer Creek v. Section 1031 Svcs.*, 235 Ga. App. 891, 893 (510 SE2d 853) (1999). See also *Union Fire Ins. Co. v. Stone*, 41 Ga. App. 49, 50 (152 SE 146) (1930) ("The defendant having contended that the policy had been canceled prior to the loss, and that therefore there was no liability thereunder, it was unnecessary for the plaintiff to do a futile act in filing a proof of loss as required by the provisions of the policy.").

Given that Batson-Cook and the city disputed whether Batson-

Cook was entitled to an adjustment in the guaranteed maximum price, and given that Raito contended it was due more compensation from Batson-Cook, it would have been futile for Batson-Cook to comply with these procedural requirements for final payment.

4. The city argues that the trial court should have granted its motion for directed verdict because Batson-Cook did not give it notice of the alleged materially differing site conditions within 21 days of its April 3, 2006 discovery, as the contract required. Specifically, the contract provided "that if a party observed materially differing conditions, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than twenty-one (21) days after the first observance of the conditions."

The city's contention that the contract requires *written* notice of materially differing site conditions is wrong. The provision requiring written notice applies to any claims Batson-Cook might have for injury or damages for which it believes the city is liable. The provision requiring notice of materially differing site conditions does not specify the method or manner of giving notice.

And some evidence was presented that the city had notice. During his cross-examination, the city's executive administrator of the project testified about his receipt in March and April 2006 of a series of e-mails between Batson-Cook, Raito, WPC, and the city that referenced the differing site condition. Given this evidence, and the April 3 date of discovery of the condition, whether the city had timely notice in accordance with the requirements of the contract was a question for the jury. *MARTA v. Green Intl.*, 235 Ga. App. 419, 423-424 (2) (a) (509 SE2d 674) (1998).

5. The city argues that the trial court should have granted its motion for directed verdict on Batson-Cook's bad faith claim because there was no evidence of bad faith. Under OCGA § 13-6-11, "where the plaintiff has specially pleaded and has made prayer [for the expenses of litigation] and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." However, if a bona fide controversy clearly exists between the parties, then an OCGA § 13-6-11 award is authorized only if a party has acted in bad faith. *Memar v. Jebraeilli*, 303 Ga. App. 557, 563 (4) (694 SE2d 172) (2010). "[B]ad faith cannot be prompted by an honest mistake as to one's rights or duties but must result from some interested or sinister motive." (Punctuation omitted.) *C & H Dev. v. Franklin County*, 294 Ga. App. 792, 795 (2) (670 SE2d 491) (2008). Whether a party has acted in bad faith is generally a jury question. *Harris v. Tutt*, 306 Ga. App. 377, 380 (3) (702 SE2d 707) (2010).

Batson-Cook does not deny that a genuine controversy existed.

Thus, it was required to present evidence of bad faith. Through its cross-examination of the city's executive administrator of the project, Batson-Cook presented some evidence that he denied Batson-Cook's claim for an adjustment in price on the ground that site conditions were not different from the conditions noted in the contract. He made this conclusion by comparing WPC's first and second reports, although Batson-Cook had by then hired an expert who concluded that conditions were very different. The administrator decided site conditions did not differ from the conditions in the contract documents solely because the contract documents indicated the presence of clay. He testified that he made this decision even though he did not have the expertise to determine whether subsurface information in April 2006 showed differing conditions than those indicated in the two WPC reports The administrator rejected Batson-Cook's materially different conditions claim, simply because the WPC reports had always indicated the presence of clay, even though the contract provided that should Batson-Cook encounter site conditions that differed materially from the conditions indicated in the contract documents or from conditions ordinarily found to exist, the price of the contract would be adjusted.

> This evidence would authorize a finding of something other than a good-faith belief on the part of [the city] that [Batson-Cook] was asking them to pay more than they were contractually obligated to pay. It follows that the trial court did not err in denying the [city's] motion for directed verdict and allowing the issue of attorney fees to go to the jury.

*Harris*, supra.

6. The city argues that the trial court erred by giving Raito's jury charges on quantum meruit and promissory estoppel because all the claims are governed by contract. On the contrary, Raito sought compensation for extra work incurred because of materially differing site conditions. It could pursue claims for both breach of contract and promissory estoppel or quantum meruit for the extra work it incurred. See *Hathaway Dev. Co. v. Advantage Fire Sprinkler Co.*, 290 Ga. App. 374 (659 SE2d 778) (2008) (affirming judgment in favor of subcontractor in its action for breach of contract and for recovery for extra work under quantum meruit).

The case the city cites to support its proposition that Raito could not seek equitable recovery for its extra work is distinguishable. In that case, *Choate Constr. Co. v. Ideal Electrical Contractors*, 246 Ga. App. 626 (541 SE2d 435) (2000), the subcontractor failed to comply with the explicit contract terms regarding payment for extra work.

Thus, we concluded,

> [i]t would be unfair, under these circumstances, to allow a subcontractor to circumvent the explicit terms of the subcontract it had admittedly agreed to by seeking payment outside the subcontract for work that was contemplated and provided for under the subcontract. Because [the subcontractor] admitted the subcontract but did not follow the procedure it prescribed for changes in work or extra work, it cannot recover for such work under a theory of quantum meruit.

Id. at 630 (4). The city cites to no provision in the contract between Batson-Cook and Raito that expressly precluded Raito from seeking equitable payment for extra work.

7. The city argues the trial court should have dismissed Raito's complaint because at the time it filed the lawsuit, it had not registered with the state as required by the Nonresident Contractors Act, OCGA § 48-13-31. Raito filed suit on March 6, 2008. It registered as a nonresident contractor on April 17, 2008. The Supreme Court has expressly held that "late registration and payment of all taxes and revenues due the State and its political subdivisions constitute substantial compliance with the requirements of the Act, thus removing the bar to maintenance of an action on the contract." *Clover Cable of Ohio v. Heywood*, 260 Ga. 341, 344 (3) (392 SE2d 855) (1990).

8. The city argues that Raito was not entitled to final payment because it had not satisfied the contract conditions for final payment. For the reasons discussed in Division 3, supra, this argument lacks merit.

*Judgment affirmed. Phipps, P. J., and Andrews, J., concur.*

DECIDED MAY 11, 2011 —
RECONSIDERATION DENIED JULY 14, 2011 — ▮

*Phillips & Morgan, Gregory K. Morgan, Andrew D. Shore, Elizabeth B. Hodges, Wiseman, Blackburn & Futrell, James B. Blackburn, Peter A. Giusti*, for appellant.

*Willis, McKenzie, DeGennaro & Alford, Charles J. Willis, Mark L. DeGennaro, Ellis, Painter, Ratterree & Adams, Robert S. Glenn, Jr., Stanley Karsman*, for appellees.