A04A2166. ALEXANDER v. WATSON.
(611 SE2d 110)

RUFFIN, Chief Judge.

Ne'Chanta Alexander ("Alexander") filed suit against her aunt, Ella Mae Alexander Watson, seeking specific performance of a settlement agreement, and the case proceeded to a bench trial.[1] Following Alexander's presentation of evidence, the trial court dismissed the action in accordance with OCGA § 9-11-41 (b). Alexander appeals. For reasons that follow, we affirm.

1. As a threshold matter, we must ascertain the appropriate standard of appellate review for a trial court's dismissal pursuant to OCGA § 9-11-41 (b). Alexander asserts that we must review the ruling under the "plain error" standard. In the alternative, Alexander maintains that the trial court's ruling should be treated as a directed verdict, in which this Court must construe the evidence in the light most favorable to Alexander. We disagree.

It is well settled that, in a bench trial, the trial court serves as the

---

[1] The complaint initially was filed by Alexander, her uncle and her minor children against Watson and other defendants. And the complaint alleged multiple causes of action. However, all other claims apparently were resolved, including those brought by Alexander's uncle. For the sake of clarity, we refer only to Alexander and her remaining claim for specific performance.

finder of fact.[2] Thus, to the extent that the trial court resolves evidentiary disputes, we affirm if there is any evidence to support the trial court's findings.[3] OCGA § 9-11-41 (b) provides, in pertinent part, that

> [a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then *determine the facts and render judgment* against the plaintiff or may decline to render any judgment until the close of all the evidence.[4]

It is evident from this language that the dismissal of a case pursuant to this Code section is not tantamount to granting a directed verdict, and a trial court is not required to construe the evidence in the plaintiff's favor.[5] Rather, the statute makes clear that the trial court is acting as factfinder. Accordingly, even if the plaintiff makes out a prima facie case, the trial court may nonetheless dismiss the case, and we will affirm unless the evidence demands a contrary finding.[6]

2. Viewed in this manner, the evidence shows that Juanita Alexander died intestate on April 7, 2003. At the time of her death, she had a $100,000 life insurance policy with Primerica Life Insurance Company. The beneficiary listed on the policy was Watson, Juanita Alexander's sister. Juanita Alexander's son, Michael Watson, was listed as the contingent beneficiary. Alexander, Juanita Alexander's daughter, was not listed on the policy.

According to Alexander, although she was not listed on the policy, her mother made Watson the beneficiary with the intention that Watson would care for Alexander and her brother, Michael.[7] Alexander also claimed that her mother intended that Alexander's two

---

[2] See *Lloyd v. Hardman*, 261 Ga. App. 894 (1) (583 SE2d 925) (2003); *Cannon v. Wesley Plantation Apts.*, 256 Ga. App. 244, 247 (2) (568 SE2d 137) (2002); *Parrott v. Fairmont Dev.*, 256 Ga. App. 253, 254 (1) (568 SE2d 148) (2002).

[3] See id.

[4] (Emphasis supplied.)

[5] See *Smith v. Ga. Kaolin Co.*, 269 Ga. 475, 476 (1) (498 SE2d 266) (1998).

[6] See id.; *Ivey v. Ivey*, 266 Ga. 143, 144 (1) (465 SE2d 434) (1996).

[7] At the time Juanita Alexander named Watson the beneficiary, Alexander was 17 years old and already the parent of a child, which undermines, although does not defeat, her argument that her aunt was to care for her. And when Juanita Alexander died, Alexander was 29.

children be provided for through the policy. However, Alexander acknowledged that there was nothing in writing to this effect.

Alexander apparently retained an attorney, who contacted Watson to discuss settling the dispute regarding payment of the insurance proceeds. Alexander's attorney sent Watson a settlement agreement, which provided inter alia that Watson waive her right to $50,000, which Primerica would pay into guardianship accounts for Alexander's two children. The agreement also provided that part of the proceeds would be used to pay for Juanita Alexander's burial expenses, and Watson would retain approximately $39,000 from the policy.

Watson testified that she was unaware of all the salient facts and confused about the proposed settlement agreement. She nonetheless agreed verbally to the terms outlined by Alexander's lawyer. But upon further reflection, Watson reconsidered her decision to settle the matter. When Watson received the settlement document, she refused to sign it. Watson then wrote Alexander's attorney, stating that she had changed her mind about settlement. Alexander subsequently filed suit to compel Watson's performance of the settlement agreement, and the case proceeded to trial.

After Alexander rested, Watson moved for dismissal, arguing that the contract was unenforceable because there was no meeting of the minds. The trial court granted the motion. Specifically, the trial court noted that

> with respect to the Primerica [policy], I don't believe that the oral agreement or contract, if that's what it is, is enforceable. I believe that the major problem with oral contracts is exactly what we are dealing with here today. When a contract is in writing, there it is. Someone signs it. You know the size and parameters of it. Here we do not. We know the terms that were set out. However, it's clear from the fact that within a couple of days [of reaching the agreement,] Ms. Watson changed her mind[;] that she didn't know all [of] the facts. She was not represented by an attorney, and what we are talking about is sizeable money. The insurance company is not going to pay unless she signs[;] unless something is in writing. I don't find that the oral agreement was or is enforceable, so the Primerica . . . policy is payable to Ms. Watson.

---

Furthermore, Watson testified that Alexander and her mother did not have a good relationship.

On appeal, Alexander asserts that the trial court ruled that the contract was unenforceable because it lacked consideration. According to Alexander, she had a bona fide claim for an implied trust, the compromise of which may serve as valuable consideration. Alexander contends that, because the trial court improperly found lack of consideration, it erred in dismissing her claim for failure to state a claim upon which relief could be granted. We disagree with Alexander's characterization of the trial court's ruling.

Georgia contract law requires " 'a meeting of the minds of the parties, and mutuality, and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon.' "[8] Here, the trial court essentially found that Watson lacked all of the facts when she initially agreed to compromise the claim. Thus, the trial court concluded that the parameters of the agreement were not concrete and that the oral agreement was unenforceable. As the factfinder, the trial court was authorized to reach this conclusion.[9] Under these circumstances, we find no error in the trial court's dismissal of the specific performance claim on this basis.

Alexander also contends that the trial court erred in finding that the complaint failed to set forth a claim of implied trust. However, the complaint only contained one claim related to the Primerica policy, which was for specific performance of a settlement agreement. "A complaint must set forth the intended theory of recovery because there can be no recovery on a theory not alleged."[10]

Alexander apparently contends that we should construe her complaint so broadly as to encompass a claim for implied trust. Even assuming, for the sake of argument, that the complaint could be so construed, we find no basis for reversal. The trial court clearly treated Alexander's claim as one for specific performance of a settlement agreement. And, when the trial court ruled in Watson's favor on this claim, Alexander did not object or otherwise raise the issue of the alleged implied trust claim. In other words, Alexander essentially acquiesced in the trial court's ruling. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal."[11] Thus, we will not consider this argument on appeal.[12]

---

[8] *Razavi v. Shackelford*, 260 Ga. App. 603, 604 (1) (580 SE2d 253) (2003).

[9] See *Smith*, supra ("At a bench trial, the trial court can determine when essential facts have not been proved.") (punctuation omitted).

[10] *Gomez v. Chao*, 239 Ga. App. 474, 475 (1) (521 SE2d 421) (1999).

[11] (Punctuation omitted.) *Gerald S. Mullis, P.C. v. Sikes*, 244 Ga. App. 368, 369 (1) (535 SE2d 533) (2000).

[12] See id.

*Judgment affirmed. Adams and Bernes, JJ., concur.*

DECIDED MARCH 1, 2005.

*Zachary & Segraves, William E. Zachary, Jr.,* for appellant.
Ne'Chanta Alexander, *pro se.*
*Bips & Bips, Mark C. Bips,* for appellee.