### A10A0710. MEMAR v. JEBRAEILLI.
(694 SE2d 172)

ELLINGTON, Judge.

Following a bench trial, Joseph Memar appeals from the trial court's judgment, which awarded him the rental proceeds from certain real property, awarded the defendant, Allie Jebraeilli, $15,000 on a counterclaim, and ordered that certain real property be

---

[14] See *McClam v. State*, 291 Ga. App. 697, 698 (1) (662 SE2d 790) (2008).

sold and that the proceeds be divided equally between the parties.[1] Memar contends that the trial court erred in calculating the damages it awarded to both parties, in awarding damages based upon quantum meruit, in admitting certain evidence, and in refusing to award him attorney fees. He also contends that the evidence was insufficient to support the award of damages to Jebraeilli. For the following reasons, we affirm the trial court's judgment in part, reverse the judgment in part, and remand this case to the trial court with direction.

> While we apply a de novo standard of review to any questions of law decided by the trial court, factual findings made after a bench trial shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. Because the clearly erroneous test is in effect the same standard as the any evidence rule, appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them.

(Citations, punctuation and footnotes omitted.) *Washington v. Harrison*, 299 Ga. App. 335, 336 (682 SE2d 679) (2009). The trial court in this case made the following findings of fact, which are supported by the record.

*Facts underlying Memar's complaint.* In 2001, Memar and Jebraeilli entered into a joint venture regarding the ownership and rental of real property located at 4423 Buford Highway, Norcross (hereinafter, "Tract 1"). The partners purchased the property for $150,000, and rented the property to several tenants for a total of $1,900 per month. The partners agreed that, after paying the mortgage ($1,183.19 per month), taxes, and other expenses, they would split the remaining income equally. According to Memar, however, Jebraeilli began collecting rent payments in October 2005 and refused to tender to Memar the amounts necessary so that Memar could pay the above expenses and Memar's portion of the net income. In November 2006, Memar filed a lawsuit against Jebraeilli asking for an injunction preventing Jebraeilli from collecting rental payments for Tract 1, an award of damages for the amount owed to him for his net portion of the rental payments and for the amount he had paid toward the mortgage and other expenses, punitive damages, and attorney fees.

---

[1] Jebraeilli filed a separate appeal from the judgment, but withdrew the appeal because the asserted errors were duplicative of the issues in the instant case and, therefore, would be rendered moot by this Court's decision in the instant case.

*Facts underlying Jebraeilli's counterclaim.* In 2002, the partners purchased a second piece of real property at 4408 Buford Highway, Norcross ("Tract 2") for $100,000 cash. The partners intended to convert a house located on the property to commercial use and agreed that Jebraeilli would act as a general contractor in renovating the property based upon his experience in construction, his engineering degree, and other relevant experience. According to Jebraeilli, Memar promised to pay him $65,000 for his efforts performed in repairing and renovating the property.

After a tree fell on the structure located on Tract 2, the partners obtained $21,111.90 in insurance proceeds for the damages sustained. Jebraeilli used some of this money to pay subcontractors and other expenses associated with the renovation of Tract 2. Witnesses testified they saw Jebraeilli working at Tract 2 regularly for over two years, but rarely saw Memar at the site. There is no dispute that the out-of-pocket cost for redeveloping Tract 2 was approximately $30,000. In 2007, Memar and Jebraeilli's ex-wife[2] sold the property for $500,000.[3]

In response to Memar's complaint, Jebraeilli filed a counterclaim asserting that Memar owed him an amount equal to one-half of the expenses he incurred in maintaining the property. He also claimed that Memar failed to pay him $65,000 for his work in developing Tract 2.

*The trial court's judgment.* Following a bench trial, the court ruled in favor of Memar on his complaint, finding that Jebraeilli owed Memar the following amounts in net rental income, mortgage payments, and expenses related to Tract 1:

| | |
|---|---|
| October 2005 through June 2006: | $12,332.76 |
| July 2006 through November 2006: | $ 7,707.97 |
| December 2006 through July 2007: | $ 1,612.82 |
| August 2007 through June 2008: | $ 7,099.14 |
| July 2008 through November 2008: | $ 622.94 |

The trial court then awarded Memar $17,042.87, the sum of the amount Jebraeilli owed Memar for the period from July 2006 through November 2008. Without further explanation, however, the court also ruled that it would apply the amount Jebraeilli owed to Memar for October 2005 through June 2006 ($12,332.76) to the amount Memar owed to Jebraeilli on the latter's counterclaim.

---

[2] In 2006, Jebraeilli transferred his interest in Tract 2 to his wife as part of their divorce settlement.

[3] See Division 3, infra, regarding the admissibility of this evidence.

On Jebraeilli's counterclaim, the court found that the parties had invested a total of approximately $108,888.10[4] in cash in Tract 2 and that, after Jebraeilli's efforts in repairing and renovating the property, Tract 2 was sold to a third party for $500,000, yielding a profit for Memar in the amount of $195,555.95 for his 50 percent interest in the property. The court concluded, therefore, that Jebraeilli's two years of work on Tract 2 was worth at least the $65,000 he was seeking from Memar. Consequently, the court ruled that Jebraeilli was entitled to $65,000 on his counterclaim in quantum meruit, but that this amount should be offset by $26,086.76[5] Jebraeilli had already received from Memar. Although the court made these express rulings in its order, it ultimately awarded Jebraeilli $15,000 on his counterclaim. The order does not explain how the court arrived at that amount.

1. On appeal, Memar contends that the trial court erred in concluding that Jebraeilli was entitled to recover damages on his counterclaim under a theory of quantum meruit. Memar argues that he never agreed to compensate Jebraeilli for his work on Tract 2, that the partners understood that the "sweat equity" that each contributed to the development of the property would be mutually beneficial, and that Jebraeilli had already been indirectly compensated for his efforts.

The record shows that, in ruling upon Jebraeilli's counterclaim, the trial court found that the parties had an understanding that Memar would reimburse Jebraeilli for a portion of Jebraeilli's labor and materials used in renovating Tract 2, but that there was no meeting of the minds between them as to the amount of that reimbursement. Because an agreement regarding the amount of reimbursement was required for there to be an enforceable contract between the parties, the court concluded that no contract existed. The court found, however, that there had been an agreement between the parties that authorized Jebraeilli to recover under the theory of quantum meruit.

> Quantum meruit literally means "as much as he deserves." It is an equitable doctrine based on the concept that no one who benefits from the labor and materials of another should be unjustly enriched thereby. Where quantum meruit is

---

[4] This amount represents the parties' initial investment of $100,000, plus out-of-pocket repair costs totaling $30,000, minus insurance proceeds of $21,111.90.

[5] As noted above, the court included in this amount the $12,332.76 that Jebraeilli owed Memar for net rental proceeds from, and mortgage payments for, Tract 1 for the period from October 2005 through June 2006.

> applicable, the provider may recover the reasonable value of goods or services transferred, but *value is defined in terms of value to the recipient.*

(Citation and punctuation omitted; emphasis supplied.) *Nextel South Corp. v. R. A. Clark Consulting*, 266 Ga. App. 85, 87 (2) (596 SE2d 416) (2004). To recover on his claim for damages based upon quantum meruit, Jebraeilli had to show (1) his services were valuable to Memar; (2) his services were either at the request of Memar or were knowingly accepted by Memar; (3) Memar's receipt of the services without compensating Jebraeilli would be unjust; and (4) Jebraeilli expected compensation for his services at the time he provided them. Id. at 86 (2).

In this case, the trial court was authorized to conclude that Jebraeilli was entitled to damages under a theory of quantum meruit, because there was evidence to support its finding that, pursuant to an agreement between the parties, Jebraeilli provided services which were knowingly accepted by Memar and which had value to him as part of a substantial profit he received on his investment upon the sale of Tract 2. Although Memar denies such an agreement existed and argues that, even if there had been an agreement, Jebraeilli had already been indirectly compensated for his efforts,[6] the resolution of such factual disputes was for the judge, as factfinder in the bench trial. *Alexander v. Watson*, 271 Ga. App. 816, 816-817 (1) (611 SE2d 110) (2005). Further, contrary to Memar's arguments, there was evidence regarding the fair market value of Tract 2 both before and after Jebraeilli's efforts, which was circumstantial evidence from which the court could determine the conferred benefit to Memar. See *Hollifield v. Monte Vista Biblical Gardens*, 251 Ga. App. 124, 130 (2) (b) (553 SE2d 662) (2001) (noting that, as to the defendant's counterclaim for the reasonable value of improvements he made to the plaintiffs' land, evidence of the increase in value of the land both before and after his services would be circumstantial evidence of the benefit he conferred to the plaintiffs and would create a jury question as to the value of the services).

---

[6] Memar argues that he should no longer be required to compensate Jebraeilli for the value he (Memar) received from Jebraeilli's improvements to Tract 2 because Jebraeilli already received the benefits of his own efforts when he transferred his interest in the property to his ex-wife during the divorce proceedings. We find such argument to be without merit, as the issue of whether Jebraeilli or his ex-wife received the proceeds of the sale of the property is irrelevant to whether Memar is obligated to Jebraeilli for the latter's efforts. Further, relieving Memar from his obligation to compensate Jebraeilli under these facts would result in an unjustified windfall to Memar.

Accordingly, because there was some evidence to support the trial court's factual findings, and because such findings were sufficient to authorize the court to award damages under a theory of quantum meruit, there was no error.

2. Memar contends that, even if the trial court did not err in awarding damages to Jebraeilli on his counterclaim under a theory of quantum meruit, the court erred in calculating its award of damages, complaining that the calculation "lacks clarity and is internally inconsistent" and is not supported by the evidence. As explained below, we agree in part.

(a) Before addressing Memar's arguments regarding the award to Jebraeilli, we note that neither party contends that the court erred in awarding Memar $17,042.87 on his claim against Jebraeilli. Therefore, that portion of the court's order is affirmed by operation of law.

(b) Memar contends that the court erred in awarding Jebraeilli $15,000 on his counterclaim because the award was not clear, was internally inconsistent, conflicted with the court's findings of fact, and was not supported by the evidence presented. As shown above, the court ruled that Jebraeilli was entitled to $65,000 on his counterclaim, minus the $26,086.76 Jebraeilli had already received from Memar. In reaching the $26,086.76 figure, the court added $6,254 (one-half of $12,508, the amount Jebraeilli withdrew from the partners' joint checking account to pay to subcontractors); $7,500 (the amount Memar loaned to Jebraeilli during the latter's divorce proceedings); and $12,332.76 (the rental proceeds for Tract 1 from October 2005 through June 2006). Each of the court's findings as to these specific amounts is supported by evidence in the record. See *CRS Sirrine v. Dravo Corp.*, 213 Ga. App. 710, 721 (4) (445 SE2d 782) (1994) (this Court will not disturb fact findings of a trial court if there is any evidence to sustain them).

Even so, the difference between the $65,000 counterclaim and the $26,086.76 set-off is $38,913.24, yet the court awarded Jebraeilli $15,000. The court's order does not offer any explanation as to how it arrived at the $15,000 award, so this Court is unable to resolve this discrepancy.

This Court will reverse the trial court's judgment in a non-jury trial where it is apparent that the judgment rests on erroneous reasoning or on an erroneous legal theory. See *CRS Sirrine v. Dravo Corp.*, 213 Ga. App. at 721 (4) (because this Court was unable to reconcile the inconsistent findings in the trial court's order and the court's award, it reversed the judgment and remanded the case with direction for the trial court to clarify its judgment on the damages issues and to enter a new judgment in accordance with the opinion). Therefore, we reverse the court's award of $15,000 in damages to

Jebraeilli on his counterclaim and remand this case with direction for the trial court either to enter an order specifically demonstrating how it calculated the $15,000 award or to recalculate the award and enter an order which contains sufficient facts that were based on the evidence presented and that explain and support the recalculated award. The right of either party to appeal from the entry of the new judgment is preserved. Id.

(c) In a related argument, Memar contends that the court should have directly awarded him, as damages pursuant to his complaint, the $26,086.76 in rental income, loans, and other funds that the court found Jebraeilli owed to him, instead of crediting that amount to what Memar owed Jebraeilli on Jebraeilli's counterclaim. Because this Court is remanding this case to the trial court for recalculation of the damages awarded on Jebraeilli's counterclaim, Memar will have the opportunity to raise this argument in the trial court. Thus, we conclude that this issue is not yet ripe for appellate review.

3. Memar contends that the trial court abused its discretion in admitting his testimony on cross-examination regarding the $500,000 sale price of Tract 2 over his objection that the evidence was irrelevant. This Court reviews a trial court's ruling on the admission of evidence under an abuse of discretion standard. *Carter v. State*, 296 Ga. App. 598, 601, n. 7 (675 SE2d 320) (2009). The trial court was authorized to conclude that the evidence was relevant to Jebraeilli's counterclaim,[7] specifically, his claim that Memar had received financial benefits as a result of his (Jebraeilli's) efforts. Thus, the court did not abuse its discretion in admitting the evidence.

4. Memar claims that the trial court erred when it denied his request for attorney fees and expenses of litigation pursuant to OCGA § 13-6-11.[8] Memar, however, has cited to no evidence showing that Jebraeilli acted in bad faith and, in the absence of bad faith, an award pursuant to OCGA § 13-6-11 is not authorized if a bona fide controversy clearly exists between the parties. *C & H Dev. v. Franklin County*, 294 Ga. App. 792, 795-796 (2) (670 SE2d 491) (2008). The record in this case demonstrates that a bona fide controversy existed between the parties. Thus, there was no error.

*Judgment affirmed in part and reversed in part, and case remanded. Andrews, P. J., and Doyle, J., concur.*

---

[7] See Divisions 1 and 2, supra.

[8] Under OCGA § 13-6-11, a plaintiff may recover the expenses of litigation if "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense[.]"

DECIDED APRIL 7, 2010.

*Mills & Hoopes, Timothy S. Walls, Graham J. Purpura*, for appellant.
*Jon A. Green*, for appellee.