**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 8, 2016

# In the Court of Appeals of Georgia

A16A0095. HAMLER v. WOOD.

PHIPPS, Presiding Judge.

Jennifer Wood d/b/a Jenny Wood Interiors ("Wood") sued Garrett Hamler p/k/a Sean Garrett ("Hamler") for breach of contract, quantum meruit, and fraud relating to interior design services provided to Hamler by Wood. Alleging that Wood's work was deficient, Hamler counterclaimed for breach of contract and recoupment/set-off. A jury rejected Hamler's counterclaims and found for Wood in the amount of $168,944. The trial court entered judgment on the jury's verdict. Hamler appeals, asserting that the trial court erred by denying his motion for directed verdict and excluding certain testimony. For reasons that follow, we affirm.

1. A trial court may direct a verdict "only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions

therefrom, [demands] a particular verdict."[1] In reviewing a ruling on a motion for directed verdict, we construe the evidence in the light most favorable to the non-movant and affirm if any evidence supports the trial court's decision.[2]

So viewed, the evidence shows that Wood is a professional interior designer who was referred to Hamler after he purchased a new home. In 2006, she and Hamler met to discuss Hamler's vision for the home, which involved "a lot of work." Wood devised an overall design plan based on their discussion, which Hamler approved, and he gave Wood an initial payment of $244,000 to "launch" the job. As the work progressed, more projects were added, including renovation work in the kitchen and laundry room. To simplify payments, Wood prepared a master invoice to which she added new projects, allowing them to keep up with "every area that [they] were addressing and then the overall budget and price." She further explained: "[T]here were payments directed from [the master invoice]. There [were] designer costs put in there, retail costs, what he was paying for, so it was very up front and a very detailed list by room of what was going to take place throughout the project."

---

[1] *Lofty v. Fuller*, 223 Ga. App. 95, 96 (1) (477 SE2d 30) (1996) (citation and punctuation omitted).

[2] Id.

The master invoice reflected the cost of items Wood purchased for Hamler, as well as any discounts she received that she passed on to him. Hamler also agreed to pay Wood $75 per hour for her design work plus a commission based on the percentage of discounts or savings she passed along to him. According to Wood, she explained her commission to Hamler before each portion of the work began. She asserted that "[i]t was all said up front," and that she never performed work or purchased an item for the house without Hamler's approval. Wood sent the master invoice to Hamler multiple times, often including with it vendor invoices that she had paid.

Between January 22, 2007, and August 28, 2008, Hamler made ten payments to Wood totaling $1,269,269 for work performed on the home. Wood used the majority of this money to pay vendors and outstanding bills relating to the project. She also paid herself approximately $57,000 for her design efforts. Based on the agreed-upon hourly rate and commission plan, however, Hamler owed her an additional $123,000. Wood contacted Hamler, requesting the balance due for outstanding purchases and money owed to her, which totaled $125,901. In response, Hamler requested that she purchase additional items for the house. Wood declined to

perform further work until he paid the balance due, and she offered to set up a payment schedule for him. He refused the offer.

Several months later, Hamler complained to Wood that the heated floors installed during the renovations were not holding a consistent temperature. Wood and the general contractor who had overseen the floor work met at the home with a flooring company representative to inspect the flooring system. They determined that the system was working properly and that any temperature deviations were normal.

Wood filed suit on August 19, 2010, asserting that Hamler had breached the terms of their agreement by failing to satisfy all amounts owed on the project, was responsible for the outstanding balance under the theory of quantum merit, and had committed fraud. After Wood presented her case at trial, Hamler moved for a directed verdict on her claims. The trial court denied the motion as to breach of contract and quantum meruit, but directed a verdict on the fraud claim. The jury subsequently found for Wood, returning a general verdict in her favor in the amount of $168,944.

(a) *Breach of Contract*. Hamler first argues that he was entitled to a directed verdict on Wood's breach of contract claim because Wood offered no evidence that the parties had entered into a valid agreement. We disagree.

4

To be enforceable, a contract "must be set forth with such certainty and completeness that either party may have a right of action upon it."[3] According to Hamler, he and Wood did not agree to the scope of the project, its cost, or the time frame for its completion, undermining any claim that they had entered into an enforceable contract. He notes that the scope, cost, and length of the project increased over time, and he claims that they never agreed to the terms of Wood's commission payment.

Wood testified, however, that although the project expanded as Hamler requested additional work, they agreed to the increased scope and Hamler approved everything "beforehand." Wood included all charges on the master invoice that she provided to Hamler. And prior to each phase of work she explained her commission, which, they had agreed, would be based on the discounts or savings that she was able to pass along to him. According to Wood, she never performed work on the home without Hamler's approval. She also asserted that she did not promise to complete the project by a particular date. Wood explained that "[i]t would [have been] impossible" to set a specific time frame for completion, particularly given the expanding scope of the project.

---

[3] *Reebaa Constr. Co. v. Chong*, 283 Ga. 222, 223 (1) (657 SE2d 826) (2008).

"The law does not favor destroying contracts on the basis of uncertainty, and a contract that may originally have been indefinite may later acquire more precision and become enforceable because of the subsequent words or actions of the parties."[4] Based on Wood's testimony, the jury was authorized to conclude that the parties had an ongoing agreement for Wood to perform work at Hamler's home, that they ultimately agreed to the scope of work to be performed, as well as its cost, and that timing was not an essential element of the agreement.[5]

We recognize that Hamler denied giving his approval for the work, and he testified that he had expected project completion within a specified time frame. But "[t]he fact that the plaintiff and the defendant differed in their testimony as to the terms of the contract is not sufficient to show that their minds had never met, but simply raised a conflict in the evidence as to what was the contract between the parties."[6] Given these conflicts, the evidence did not demand a particular verdict on

_____

[4] Id. (citation and punctuation omitted).

[5] See *Peace v. Dominy Holdings*, 251 Ga. App. 654, 655-656 (1) (554 SE2d 314) (2001) ("The requirement of certainty [in a contract] extends not only to the subject matter and purpose of the contract, but also to the parties, consideration, and even the time and place of performance *where time and place are essential.*") (punctuation and footnote omitted; emphasis supplied).

[6] *Lofty*, supra (citation and punctuation omitted).

6

the breach of contract allegations.[7] Hamler, therefore, was not entitled to a directed verdict on this claim.[8]

(b) *Quantum Meruit*. Hamler further argues that the trial court should have directed a verdict for him on Wood's quantum meruit claim because Wood offered insufficient evidence regarding the reasonable value of her services. "Proof of the reasonable value of services rendered to and accepted by a defendant is an element essential to recovery on a quantum meruit basis."[9] The key inquiry "is not the value of the labor but the value of the benefit resulting from such labor to the recipient; if

---

[7] See id. at 96-97 (1).

[8] See *Reebaa Constr. Co.*, supra at 223-224 (1) (homeowner not entitled to directed verdict on contractor's breach of contract claim where at least some evidence showed that homeowner agreed to cost of renovations, including price increase resulting from change orders); *Lofty*, supra at 96 (1) ("Because [plaintiff] presented evidence that there was a meeting of the minds . . . , the parties' disagreement about the precise contract terms constitutes a genuine issue of material fact for the jury."); *Danfair Properties v. Bowen*, 222 Ga. App. 425, 426 (474 SE2d 295) (1996) ("The fact that [a party] contested whether there was a meeting of the minds on the terms of the [agreement] required that the issue be presented to the jury.") (citation omitted).

[9] *Diegert v. Cedarbrook Homes*, 267 Ga. App. 264, 265 (599 SE2d 211) (2004) (punctuation and footnote omitted).

there is no benefit to the recipient, then there is no recovery for something of no value to the recipient."[10]

With respect to value, Wood offered evidence of the master invoice, which detailed the cost of work approved by Hamler, as well as testimony regarding the hours she spent on the project and their agreed-upon hourly rate. She explained the balance due on Hamler's account. Moreover, she asserted that Hamler never questioned the time she billed to the project, did not raise most of his complaints about the workmanship until "[y]ears later,"[11] asked her to continue working for him, and promised to pay her. Because such evidence authorized the jury to value the benefit of Wood's services, the trial court properly denied Hamler's motion for directed verdict as to quantum meruit.[12]

---

[10] Id. (footnote omitted).

[11] In connection with this lawsuit, Hamler filed an affidavit in 2014 raising several complaints about the renovations, including allegations that the marble flooring was not properly grouted, that the stainless steel island installed in the kitchen was scratched, and that various lighting elements did not work. Wood testified, however, that she had no notice of these alleged problems before the litigation.

[12] See *Amstead v. McFarland*, 287 Ga. App. 135, 137-138 (1) (650 SE2d 737) (2007) (attorney's evidence regarding the reasonable value of his services supported award of quantum meruit against former client); *Razavi v. Shackelford*, 260 Ga. App. 603, 606 (2) (580 SE2d 253) (2003) (given evidence regarding work that claimant

8

2. Finally, Hamler contends that the trial court erred in excluding his testimony that several pieces of valuable jewelry disappeared while Wood oversaw work at his home. "A trial court retains broad discretion in determining whether to admit or exclude evidence, and absent an abuse of discretion, we will not interfere with a trial court's determination as to the admission or exclusion of evidence on the grounds of relevancy."[13]

We find no abuse of discretion here. According to Hamler, evidence regarding the lost jewelry was relevant to his valuation of Wood's services for purposes of quantum meruit. He thus argues that "the trial court unduly restricted [his] testimony" regarding this claim. Quantum meruit, however, is an equitable doctrine "based on the concept that no one who benefits from the labor and materials of another should be unjustly enriched thereby."[14] Ultimately, the fact-finder must determine the extent to which a party receiving materials or services benefitted from those materials or

performed for defendant, "[w]hether [defendant] received a benefit from [claimant's] work and the value of that work [were] issues exclusively within the province of the jury to decide").

[13] *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 739 (6) (698 SE2d 19) (2010) (citation and punctuation omitted).

[14] *Memar v. Jebraeilli*, 303 Ga. App. 557, 560 (1) (694 SE2d 172) (2010).

9

services.[15] We fail to see how Wood's alleged failure to oversee or safeguard Hamler's jewelry pertained to the reasonable value of design services actually provided to – and accepted by – Hamler.[16]

Evidence regarding jewelry lost during the renovation work *might* have been relevant to some other claim. On appeal, however, Hamler asserts only that it should have been admitted for purposes of quantum meruit valuation; he does not contend that it was admissible to prove or defend against another claim. Accordingly, he has not shown that the trial court abused its discretion in excluding the evidence.[17]

*Judgment affirmed. Dillard and Peterson, JJ., concur.*

---

[15] See *Wallin v. Wallin*, 316 Ga. App. 455, 456 (1) (729 SE2d 567) (2012).

[16] See id.

[17] See *Terrell v. Pippart*, 314 Ga. App. 483, 487 (3) (724 SE2d 802) (2012) (trial court did not err in excluding testimony in quantum meruit action that was "not relevant to the reasonable value of the work performed").