**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 9, 2025**

# In the Court of Appeals of Georgia

A25A0706. SOMERVILLE v. 1ST ONSITE, LLC.

HODGES, Judge.

Clayton Wesley Somerville appeals from a trial court order in favor of "1st Onsite, LLC d/b/a Servpro f/k/a Ardnos, Inc.," ("1st Onsite") and Samson Construction ("Samson") that awards more than $49,000 to the companies, including attorney fees, following an action in which 1st Onsite sued Somerville after he failed to pay for restoration, cleaning, reconstruction, and mitigation services to remediate a severe water leak at his house. For the following reasons, we affirm in part, reverse in part, and vacate in part, and we remand the case for further proceedings consistent with this opinion.

When the trial court sits as the trier of fact, its findings and conclusions have the effect of a jury verdict. Thus, we will not disturb

the trial court's decision if there is any evidence to support it. Additionally, we do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment.

(Citations and punctuation omitted.) *Hathaway Dev. Co. v. Advantage Fire Sprinkler, Co.*, 290 Ga. App. 374 (659 SE2d 778) (2008).

As an initial matter, this appeal arises from a suit for damages for breach of contract, or alternatively, for the reasonable value of the work completed if there was no contract. Most of Somerville's contentions are based on the assertion that the company with which he contracted is not the same as the one which performed the work or which sued him for nonpayment. The appellees are indeed comprised of a confusing mishmash of interlinked companies and names, upon which Somerville bases many of his arguments, to wit: that he signed a contract with one company (Ardnos, Inc.) but was sued by another (1st Onsite, LLC d/b/a SERVPRO f/k/a Ardnos, Inc.), and that the trial court erroneously awarded damages, prejudgment interest, and attorney fees to 1st Onsite. For clarity, we will begin with an exploration of the relationships between these companies.

First, Somerville asserted in his answer and counterclaim that he hired Ardnos, Inc. to perform remediation work after a water leak. The evidence at trial showed that Ardnos owns and is a holding company for 1st Onsite,[1] and that 1st Onsite, in turn, owns six Servpro franchises, including the one at issue here, Servpro of Forsyth and Dawson Counties. 1st Onsite acquired the Servpro franchises from Ardnos in January 2018[2] — about seven months before Ardnos and Somerville entered into their contract in July 2018.

The July 2018 contract for remediation services that Somerville signed, however, contains a signature line with the designation "Ardnos, Inc., dba SERVPRO of Forsyth and Dawson Counties." It does not include the company name "1st Onsite." 1st Onsite asserts that because of a clerical error, some of its customer contract templates were not updated after the ownership change, and as a result, Ardnos was listed by mistake as the Servpro franchise owner even after 1st Onsite had acquired the franchise.

---

[1] Ardnos also owns and is the holding company for Samson, a company that performed construction work at Somerville's home, as will be discussed in more detail in Division 6, infra.

[2] Ardnos and 1st Onsite are both owned by the same people.

Somerville received a bill from from "SERVPRO 1st Onsite, LLC" for $15,335.73 for water damage restoration. Somerville accepted the work and admits in judicio that the project was a "finished project, with no work left to perform." Although Somerville had prior invoices for the same job, and despite writing in e-mail communications with the subject line "Re: Servpro invoice" that he intended to pay this invoice once he received funds from his insurance adjuster, he did not do so. Instead, he complained in e-mails and later, in testimony, that workers from a related company, Samson, with which he had a separate contract, had not completed work in a timely manner and had destroyed some of his furniture, a stair rail, and some base cabinets.[3]

On June 5, 2019, 1st Onsite sent a demand letter to Somerville, claiming he owed $15,335.73 for the work, plus interest. When he failed to pay, 1st Onsite filed suit, arguing breach of contract and, alternatively, theories of open account or quantum meruit. The suit also sought attorney fees and expenses of litigation.

After a bench trial, the trial court in a summary order awarded 1st Onsite $30,256.61 but did not specify the nature of the award or the legal theory upon which

---

[3] The 1st Onsite invoice reflected a credit from a separate contract with Samson. The Samson contract will be addressed in Division 6, infra.

it was based. The order also awarded 1st Onsite $3,254.39 in attorney fees under

OCGA § 13-1-11 as well as $15,131 in attorney fees under OCGA § 9-11-68. The court

additionally awarded Samson $576.76,[4] again without specifying the nature of the

award or the underlying legal theory. Somerville appealed.

1. Somerville argues on appeal that the trial court "improperly denominated"

the parties in the caption of its final order. We find no reversible error.

In a consent order entered on April 24, 2024, the parties agreed pursuant to

OCGA § 9-10-132 to correct misnomers and that the caption of the case would be

changed to "Ardnos Inc. and 1st Onsite, LLC d/b/a Servpro of Forsyth and Dawson

Counties v. Clayton Wesley Somerville v. Samson Construction, LLC."
The caption in the order under appeal, however, reads: "1st Onsite, LLC d/b/a

Servpro f/k/a Ardnos, Inc. v. Clayton Somerville v. Samson Construction, LLC."

There no indication that Somerville raised this issue in the trial court. In fact,

a hearing notice issued after the consent order and prior to the order under appeal uses

---

[4] Somerville contends that the trial court incorrectly denominated Samson as a third-party defendant, but that Samson "was more properly an additional co-plaintiff and counter-claim defendant[.]" Somerville does not indicate that he ever attempted to address or correct this in the trial court.

the incorrect caption, and there is no evidence that Somerville objected to or sought to correct this. Further, Somerville himself used an incorrect caption in a post-consent-order scheduling-conflict letter he sent to the court. See *Dept. of Community Health v. Houston Hosps.*, 372 Ga. App. 218, 224 (4) (904 SE2d 70) (2024) ("A party cannot acquiesce in a procedure by a trial court and then complain of it. Failure to object to the procedure amounts to a waiver.") (citation and punctuation omitted).

Further, Somerville does not argue how he has been harmed,[5] nor does his enumeration cite to any legal authority. See Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."). In any event, we note that a trial court may amend clerical errors in a judgment even after its execution. See generally *Rucker v. Williams*, 129 Ga. 828, 830-831 (60 SE 155) (1908); OCGA § 9-11-60 (g). This contention of error presents nothing for review.

2. Somerville argues that the trial court erred in awarding damages under a breach of contract theory to 1st Onsite. Specifically, he contends that because the contract was between him and Ardnos — not 1st Onsite — this is more than a mere

---

[5] The appellees likewise do not claim harm, and indicate that they will not oppose an amendment to correct the caption.

misnomer and there was no privity of contract. As noted above, Somerville alternatively argued that the trial court erred if it awarded damages in quantum meruit, which we will address in Division 3, infra. Again, because of the minimalist nature of the trial court's order, it is unclear under what theory it awarded damages.

"A plaintiff may simultaneously *sue* upon theories of express contract and, alternatively, implied contract, although he cannot *recover* on a quantum meruit where an express contract exists." (Citation and punctuation omitted; emphasis in original.) *Hardin v. Hunter*, 174 Ga. App. 756, 757 (3) (331 SE2d 83) (1985).

Here, the evidence showed that Ardnos is listed on the contract and 1st Onsite is not. 1st Onsite admitted at trial that it was not a party to the contract. Ardnos and 1st Onsite are separate companies with separate tax identification numbers, the ownership shift involved an asset transfer and not a stock transfer, and their names are dissimilar, so we cannot say that this was a mere misnomer. See *Zuberi v. Gimbert*, 230 Ga. App. 471, 472-473 (1) (496 SE2d 741) (1998) ("ATM Manufacturing, Inc." was not a misnomer of either "ATM America Corp." or "ATM Enterprises, Inc." in part because the difference between names was "substantial and [did] not involve the mere abbreviation of a longer, official corporate name"); *Jones v. Burlington Indus.*, 196 Ga.

7

App. 834, 837 (2) (397 SE2d 174) (1990) ("RBJ Textiles" and "RBJ Textiles, Inc." were not misnomers of "RONJON, Inc." in part because there was "substantial variance in name content" and the names "on their face appear to be completely separate legal entities") (emphasis omitted); see generally *Robinson v. Reward Ceramic Color Mfg.*, 120 Ga. App. 380, 381 (2) (170 SE2d 724) (1969) (considering whether variance in corporate name was substantial, and whether it appeared from the evidence that the names were two separate corporations, in determining whether variance was misnomer). While a party's rights under a contract are generally assignable as a matter of law, 1st Onsite does not argue that it was an assignee of Ardnos, there is no evidence that 1st Onsite was "formerly known as" Ardnos, and there is no evidence that Ardnos assigned its rights under the contract to 1st Onsite. See generally *Jet Air v. National Union Fire Ins. Co.*, 189 Ga. App. 399, 401 (1) (375 SE2d 873) (1988); OCGA § 44-12-22.

As a result, there was no express contract between 1st Onsite and Somerville nor was 1st Onsite authorized to enforce the contract. This does not end our analysis, however.

3. Somerville also argues, alternatively, that the trial court erred in awarding judgment to 1st Onsite on a theory of quantum meruit. While we find that the trial court was authorized to conclude that 1st Onsite was entitled to recovery in quantum meruit, for the reasons that follow, we vacate the trial court's damages award to 1st Onsite and remand the case for further proceedings consistent with this opinion.

It is undisputed on appeal that 1st Onsite performed the work on the property, that Somerville accepted the work, and that the invoice at issue came from 1st Onsite. Our law provides that "when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." OCGA § 9-2-7.

> Quantum meruit literally means "as much as he deserves." It is an equitable doctrine based on the concept that no one who benefits from the labor and materials of another should be unjustly enriched thereby. Where quantum meruit is applicable, the provider may recover the reasonable value of goods or services transferred, but value is defined in terms of value to the recipient.

(Citation, punctuation, and emphasis omitted.) *Memar v. Jebraeilli*, 303 Ga. App. 557, 560-561 (1) (694 SE2d 172) (2010). Somerville argues that 1st Onsite failed to provide

evidence that he received reasonable value, and cites *Zampatti v. Tradebank Intl. Franchising Corp.*, 235 Ga. App. 333, 340 (5) (508 SE2d 750) (1998), for the proposition that the measure of damages under quantum meruit is not simply the cost of the services or goods, but rather the value or benefit conferred upon the recipient. While it is true that in showing value, it would be "error to rely blindly upon the . . . contract[,]" *Sosebee v. McCrimmon*, 228 Ga. App. 705, 707 (1) (492 SE2d 584) (1997), there is no indication that this is what occurred here, and the evidence in the record supports the trial court's judgment that 1st Onsite showed Somerville benefitted and received value from the services and materials 1st Onsite provided. The question of the amount of that value remains, however, as will be discussed below.

The evidence of value received includes a detailed, itemized, 19-page estimate of the work to be performed, the materials to be used, and the number of hours for each component of the job. Somerville acknowledged that the work had, in fact, been performed. Further, the record includes Somerville's insurance company's estimate and detailed assessment of the work, and shows that the insurer paid for and did not dispute the value of the work performed. Further, Somerville stated his intention to pay for the work multiple times, as noted above, and points to no evidence that he

complained about the work performed by 1st Onsite.[6] See *Hamler v. Wood*, 337 Ga. App. 319, 322-323 (1) (b) (787 SE2d 299) (2016) (concluding jury was authorized to find recipient received value from interior designer's services where designer offered "evidence of the master invoice, which detailed the cost of work approved by [purchaser]," as well as evidence of the hours spent on the project, and where the purchaser did not complain about the quality of the work until "years later," where there was no evidence the purchaser questioned the number of hours spent and where the purchaser had promised to pay the designer) (punctuation omitted); see generally *Wallin v. Wallin*, 316 Ga. App. 455, 457 (1) (729 SE2d 567) (2012) (finding that insurance value was sufficient evidence of reasonable value of benefit conferred).

It is axiomatic that a determination of the benefit conferred by the goods and services rendered was a question for the trier of fact, not for this Court. See *William H. Stoll, LLC v. Scarber*, 287 Ga. App. 672, 674 (2) (652 SE2d 834) (2007); see also *Zampatti*, 235 Ga. App. at 340 (5). It is well settled that the trier of fact

---

[6] Somerville did not raise his complaints about "shoddy" work performed under a separate contract by 1st Onsite's related company, Samson, until filing his answer and counterclaims in 2019, more than a year after the work by 1st Onsite had been completed.

11

is not bound by the exact limits of the evidence. The [judge in a bench trial] may consider the nature of the property involved and any other facts or circumstances within [his or her] knowledge, and a [judgment] which exceeds or falls short of the value testified to will be sustained where there are sufficient facts in evidence from which [to] draw a legitimate conclusion, and the [judgment] is not palpably unreasonable under all the evidence so as to be excessive as a matter of law.

(Citation and punctuation omitted.) *Wallin*, 316 Ga. App. at 457 (1).

As outlined above, there was evidence in the record to support the trial court's award under a theory of quantum meruit for the reasonable value of the goods and services provided. However, the trial court made an unspecified, undifferentiated award of $30,254.61 to 1st Onsite. 1st Onsite only sought $15,335.73 in principal representing the value of its services to Somerville. 1st Onsite never argued or presented evidence that the reasonable value of its services amounted to $30,254.61. See generally *Bleckley v. Bleckley*, 189 Ga. 47, 57 (9) (5 SE2d 206) (1939) (finding, in subrogation action, that a plaintiff may "in no event recover more than the value of the services" in quantum meruit). As a result, while we affirm 1st Onsite's entitlement to judgment under a quantum meruit theory, the award to 1st Onsite must be vacated

and the case remanded to the trial court for a determination of the value of the benefit Somerville received, and of the amount 1st Onsite is entitled to receive.[7]

4. Somerville argues that the trial court erred in awarding pre-judgment interest to 1st Onsite. Although, as noted above, the trial court's award made no distinction between monies awarded for the reasonable value of services performed versus monies awarded for interest, as Somerville contends in his appellate brief, "[i]t is apparent that such an award included some amounts in respect of pre-judgment interest." We find that the trial court erred.

In the trial court, 1st Onsite sought $16,458.12 in pre-judgment interest. If the trial court had granted 1st Onsite's full request for principal and interest, the total award would have totaled $31,793.85; instead the undifferentiated award was $30,254.61. While it is not possible to know the basis of the trial court's award, as Somerville argues, pre-judgment interest is precluded as a matter of law on a claim for quantum meruit. See *Howell v. Styles*, 221 Ga. App. 781, 785 (5) (472 SE2d 548) (1996). To the extent that the trial court's award included pre-judgment interest, this

---

[7] As a result of our determination in Division 2, we need not examine Somerville's contentions of error related to alternate legal theories upon which the trial court might have rendered its judgment.

was error and must be reversed. If the funds awarded are not pre-judgment interest but are otherwise in excess of the reasonable value of the services rendered, they must likewise be reversed.

5. Somerville contends that the trial court erred in its award of attorney fees to 1st Onsite. In the trial court, 1st Onsite requested attorney fees under OCGA § 13-1-11 or, alternatively, under OCGA § 13-6-11. The trial court awarded OCGA § 13-1-11 attorney fees, as requested. It awarded no OCGA § 13-6-11 attorney fees, but sua sponte awarded $15,131.00 in attorney fees to 1st Onsite under OCGA § 9-11-68, an attorney fee statute which applies to written offers to settle tort claims.[8] The trial court erred.

(a) *Attorney fees under OCGA § 9-11-68.* As Somerville points out, there is no written offer of settlement pursuant to this Code section in the record, which is required by OCGA § 9-11-68 (a) (1). Nor does the record indicate that 1st Onsite ever requested attorney fees under this statute. Although 1st Onsite attempts to argue that OCGA § 9-11-68 (e) does not require an offer of settlement, OCGA § 9-11-68 (e) provides that, "[*u*]*pon motion by the prevailing party* at the time that the verdict or

---

[8] In contrast, quantum meruit is an equitable doctrine. See *Nextel South Corp. v. R. A. Clark Consulting*, 266 Ga. App. 85, 87 (2) (596 SE2d 416) (2004).

judgment is rendered, the moving party may request that the finder of fact determine whether the opposing party presented a frivolous claim or defense[,]" and 1st Onsite provides no citation to the record showing it ever made such a motion. (Emphasis supplied.) Further, this portion of the statute provides that the trial court "*shall hold* a separate bifurcated hearing at which the finder of fact *shall make* a determination of whether such frivolous claims or defenses were asserted and to award damages[.]" (Emphasis supplied.) Id. 1st Onsite points to no evidence in the record that any such hearing was held — based upon a motion it did not make related to a type of attorney fees it did not seek. "When awarded by statute, attorney fees may be obtained only pursuant to the statute under which the action was brought and decided." (Citation and punctuation omitted.) *Sinkwich v. Conner*, 288 Ga. App. 320, 322 (654 SE2d 182) (2007). The award of attorney fees pursuant to OCGA § 9-11-68 was error and must be reversed.

(b) *Attorney fees under OCGA § 13-1-11*. The trial court awarded $3,254.39 to 1st Onsite under OCGA § 13-1-11, which provides in certain circumstances for enforcement of attorney fee provisions in notes or other evidence of indebtedness. 1st Onsite sought OCGA § 13-1-11 attorney fees pursuant to a provision in the contract

with Somerville, and argues that it sent a 10-day notification letter as required by OCGA § 13-1-11 (a) (3). However, 1st Onsite was not a party to the contract and did not hold debt pursuant to the contract, meaning its 10-day letter did not comply with the statute. See *RES-GA SCL, LLC v. Stonecrest Land, LLC*, 333 Ga. App. 289, 304 (4) (c) (776 SE2d 489) (2015) (finding that strict compliance applies to the requirement in OCGA § 13-1-11 (a) (3) that the holder of the note must send the notice). As we determined in Division 1, there was no contract between 1st Onsite and Somerville. See *Metro. Tractor v. Samples Grading Co.*, 167 Ga. App. 102, 103 (2) (306 SE2d 68) (1983) (finding that OCGA § 13-1-11 does not apply where there is no contractual provision for attorney fees). The trial court erred, and this award of fees is vacated for the trial court to consider whether an award pursuant to OCGA § 13-6-11, as requested by 1st Onsite, is warranted.

6. Finally, as noted above, the trial court awarded unspecified damages of $576.76 to Samson.[9] Somerville argues that the trial court should have awarded judgment to him, not Samson. He contends that Samson's reconstruction work was

---

[9] The trial court explicitly did not award attorney fees to Samson.

deficient and that it unilaterally terminated the contract without giving him the contractual 10 days' notice and the right to cure; he also argues Samson was negligent.

This enumeration, however, while replete with mathematical calculations, does not contain any real legal argument, nor does it contain a single citation to legal authority. Court of Appeals Rule 25 (a) (7) ("At a minimum, the appellant's brief *must include* . . . [an] *argument*, which *must cite* the authorities relied on . . . .") (emphasis supplied), Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority . . . may be deemed abandoned."); see *Dept. of Community Health v. Houston Hosps.*, 365 Ga. App. 751, 769 (V) (2), n.62 (880 SE2d 245) (2022) (finding that "legal argument . . . requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts"). This contention of error has been abandoned.

In sum, we affirm the trial court's judgment in favor of 1st Onsite under a theory of quantum meruit, but vacate the damages award, and remand the case to the trial court for further proceedings consistent with this opinion; we reverse the award of pre-judgment interest to 1st Onsite and the attorney fee award pursuant to OCGA § 9-11-68; we vacate the award of attorney fees pursuant to OCGA § 13-1-11, and

remand for further proceedings consistent with this opinion; and we affirm the damages award to Samson.

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded. McFadden, P. J., and Pipkin, J., concur.*